CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

APR 0 5 2007

JOHN F. CORCORAN, CLERK
BY: ⎯⎯⎯⎯⎯⎯⎯⎯⎯
DEPUTY CLERK

| | | |
|---|---|---|
| MELISSA HINCHEY, | ) | |
| | ) | |
| *Plaintiff* | ) | Civil Action No. 5:06cv00047 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | By:  Hon. James G. Welsh |
| | ) | United States Magistrate Judge |
| *Defendant* | ) | |

Plaintiff, Melissa Hinchey brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, as amended, ("the Act"), 42 U.S.C. §§ 416 and 423.  Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

On September 18, 2007, the Commissioner filed her Answer and a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered September 25, 2006, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In her subsequently filed memorandum in support of summary judgment, or alternatively for remand and administrative reconsideration, the plaintiff advances three assignments of reversible error. First, she argues that the administrative decision is fatally flawed because the administrative law judge ("ALJ") predicated his analysis of her claims on a significantly erroneous disability onset date.[1] Second, the plaintiff argues that the Commissioner's decision is not supported by substantial evidence. And as her third contention, the plaintiff argues that she submitted new and material evidence to the Appeals Counsel which was not given the required consideration.

In response, the Commissioner has moved for summary judgment in her favor and submitted a supporting memorandum. Therein, she argues that the ALJ's use of an incorrect onset date is "irrelevant;" that plaintiff's residual functional capacity, as determined by the ALJ, is supported by substantial evidence; and, in reliance on *Alexander v. Apfel*, 14 F. Supp.2[d] 839 (WDVa, 1998), that the plaintiff's "interim" evidence submitted to the Appeals Counsel did not pertain to her disability during a relevant time period.[2] No request was made for oral argument.[3] The undersigned having

---

[1] In the application form prepared by local SSA office staff, the plaintiff 's disability onset date was recorded as 06/15/1996 (R.63,309); however, both the Protective Filing Worksheet (R.62) and her individually prepared Disability Report (R.78) state that she became unable to work on 10/22/2002, the date on which she was terminated from her last work effort because of excessive absenteeism (R.78). Her attorney subsequently informed the agency in writing that the plaintiff's disability onset date should be amended to 04/09/2002, the date on which she was terminated from her last substantial gainful work activity. (R.61).

[2] For DIB purposes, the relevant time period ended 12/31/2003. (R.66). For SSI purposes, the relevant time period ended 09/01/2005, the date of the ALJ's decision. (R.25).

[3] Paragraph 2 of the court's Standing Order No. 2005-2 directs that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

now reviewed the administrative record, the following report and recommended disposition are submitted.

I.      **Standard of Review**

The court's review is limited to determining whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by the Act and applicable administrative regulations. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966).

"Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

3

## II.    Administrative History

The record shows that the plaintiff protectively filed her applications for DIB and SSI on or about August 26, 2003. (R.90,309).  In her disability report, the plaintiff alleged that she was disabled due to the combined effects of her chronic low bank pain, depression and low stress tolerance. (R.78).  Her claim was denied, both initially and on reconsideration. (R.16,27-38,250-254,312-321).  Pursuant to her timely request, an administrative hearing on her application was held on June 29, 2005 before the ALJ. (R.43-59,359-388).  The plaintiff was represented by counsel at the administrative hearing. (R.39-42,60-61,359-388).

Utilizing the agency's standard five-step inquiry,[4] the plaintiff's claim was denied by written administrative decision on September 1, 2005.  At the initial determination step, the ALJ found that the plaintiff last met the Act's insured status requirements on December 31, 2003 (R.17,24), and contradictorily he found that she both had and had not engaged in substantial gainful work activity since June 15, 1996 (R.17-18,19-20, 24).

---

[4] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).  It begins with the question of whether, during the relevant time period, the claimant engaged in substantial gainful employment.  20 C.F.R. § 404.1520(b).  If not, step-two of the inquiry is a determination, based upon the medical evidence, of whether the claimant has a severe impairment that has lasted or is expected to last for 12 months.  20 C.F.R. § 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212 (2002).  If the claimed impairment is sufficiently severe, the third-step considers the question of whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations.  20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I.  If so, the claimant is disabled; if not, step-four is a consideration of whether the claimant's impairment prevents him or her from returning to any past relevant work.  20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a).  If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the claimant from performing other work.  20 C.F.R. § 404.1520(f).

4

At step-two he found the medical evidence established that the plaintiff had a "back impairment" which could cause significant vocationally relevant limitations and was, therefore, a "severe" impairment [5] within the meaning of the Act. (R.20). Although the ALJ's opinion at step-two is less than clear, it appears to the undersigned the ALJ concluded that the plaintiff's mental health problems were less than severe because they never prevented her from working for any continuous twelve-month period. [6] (R.18-20). Additionally, at step-two the ALJ concluded that the absence of any treatment for her hepatitis-C indicated that it was also not a severe impairment. (R.20).

At step-three, the ALJ concluded that the plaintiff's "back impairment" did not meet or equal the criteria of Listing 1.04, and her depression was "not at the level" of a Listing 12.04 impairment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.20,24). In particular, the ALJ predicated the second part of this step-three conclusion on what he viewed as the "absence of episodes of decompensation of extended duration," the "general response" of her depression to treatment, and only a "moderate" to "mild" adverse impact of her depression on her daily activities, social functioning and concentration. (R.20).

---

[5] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *See also* 20 C.F.R. § 404.1520(c).

[6] Citing *Barnhart v. Walton*, 535 U.S. 212 (2002) for the principle that the impairment must be severe enough to prevent "substantial gainful work" for 12 months, the ALJ noted that this durational element must be considered at step-two of the five-step sequential evaluation process. (R.18-19).

5

The ALJ next concluded that the plaintiff's allegations concerning her symptoms and limitations were "not entirely credible." (R.21-22, 24). In addition, he concluded that the plaintiff was only "moderately" limited in her ability to maintain attention and concentration, in her ability to perform tasks within a schedule and maintain regular attendance, in her ability to complete a normal work day or work week without interruptions from psychologically based symptoms, in her ability to perform activities at a consistent pace "without an unreasonable number and length of rest periods," and in her ability to travel or use public transportation. (R.21,24). Subject to these limitations, in the opinion of the ALJ, the plaintiff otherwise possessed the functional ability to perform work at the light exertional level. (*Id.*).

Continuing the required sequential decisional process, the ALJ next found that the plaintiff could not perform any past relevant work, but she was "capable of performing a significant range of jobs in the national economy." (R.23-25).

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review and submitted additional supporting medical evidence, including a functional assessment done by her primary care physician at the UVa Clinic. (R.12,9-11,322-357). Her request was subsequently denied (R.6-9), and the ALJ's unfavorable decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

6

## III.    Facts

The plaintiff was born in 1964 and was forty-one years of age at the time of the administrative hearing. [7] (R.74,359,382). Although she quit school after completing the 9th grade, she subsequently earned a general education diploma and completed approximately one and one-half years of college-level course work. (R.362-363,382). In the past she worked as a line cook in a restaurant (R.17,103,105,364-365,383), as a materials handler in a manufacturing facility (R.106,365-366,383), as a manager in the restaurant industry (R.102,108-109, 368,383) and as an office assistant as part of an adult work/study program (R.103,107,367-368,383).

In addition, she worked for five months in 2002 as an assistant manager of a small loan company office (R.103-104,363-364,383). This work effort, however, proved to be unsuccessful, and she was "terminated" for chronic absenteeism. (R. 363-364, 135)

The plaintiff testified that she has had long-standing back problems, that she underwent her first back surgery at the age of twenty-four, and that she has continued to have significant back pain despite multiple surgical efforts to correct the problem. (R.370). Her pain is principally her low back with radiating pain and numbness into her lower extremities, particularly into the left buttock and left leg. (R.371,372). She has back pain daily; however, it is "not really consistent every day." (R.371). Some days are worse than others, and she estimated that the number of bad days each month

---

[7] At this age she is classified as a "younger worker" pursuant to 20 C.F.R. §§ 404.1563(c) and 416.963(c). (R.382).

7

will vary from as few as five or six to as many as twenty. (R.372). Additionally, she experiences significant pain and difficulty using stairs due to arthritic knees, particularly the right one. (R373,376). Her pain problems are managed conservatively by Dr. Preston Grice at Augusta Pain Management. (R.375-376, 165-189).

In her testimony, the plaintiff stated that she had been hospitalized three time due to acute depression. (R.373-374). The first occurred when she was a teenager, and the most recent was an admission to the psychiatric facility at Augusta Medical Center ("AMC") in 2002. (*Id*.). Her chronic depression has been generally treated with a pharmacological regime, and over the years she has been seen for psychiatric care by Dr. Marigail Wynne; however, she had to stop seeing the psychiatrist when her son turned eighteen and she "lost [her] Medicaid." (R.374-375).

Since becoming Medicaid ineligible, the plaintiff has obtained her medications and medical care through Dr. Kimberly Druff at the University of Virginia Hospital's general medicine clinic ("UVa Clinic"), including the systematic monitoring of a recently diagnosed hepatitis-C condition. (R.374-375,203-223,255-299).

The plaintiff lives in a town house with her twenty year-old son. (R.376-377). He helps her with some of the household chores, and she does what she can, depending on how she feels. (*Id*.). According to the plaintiff's mother, who also testified, the plaintiff used to keep an "immaculate" house; now, however, the plaintiff does "very little," and the mother and her grandson do "basically what gets done." (R.381). The plaintiff's mother additionally testified that she visits her daughter

8

regularly and has noted over time that her daughter is exhibiting increasing signs of low self-esteem, chronic fatigue, depression, and apparent suicidal ideations. (R.380-382).

The plaintiff's mental health-related records show, *inter alia*, that during the years 2000 and 2001, she received mental health care through the Valley Community Services Board, a local mental health agency, for recurrent major depression and a generalized anxiety disorder. (R.155-164). Although she appeared at times to demonstrate anxiety symptoms and some personality disorder traits at other times during this period, was assessed to be "stable" with medication. (*Id.*).

In March 2002, however, she reported having some feelings of paranoia and agoraphobia (R.154), and on April 8, 2002 she was admitted to AMC's psychiatric facility with a diagnosis of "severe" recurrent major depression. (R.140,143). Her condition "stabilized" over the next ten days[8], and she was discharged on a significant medication regime and with instructions to follow-up with an intensive outpatient program (R.140-141,143,140). Although her condition improved initially and she attempted to return to work (R.153), it appears to have again deteriorated after her work attempt proved to be unsuccessful (R.151-152).

During 2003, the plaintiff continued to be treated for major depression and anxiety; she continued to experience episodic exacerbation of her symptoms, but did not require further hospitalization. (R.146-150,302-303). In Dr. Wynne's opinion, dated October 9, 2003, the plaintiff

---

[8] On admission, the plaintiff's Axis V GAF score was assessed to be 40, and on discharge it was assessed to be 60.

had remained unable to work due to her mental health problems since being discharged from the hospital in April of the prior year. (R.302-303).

The 2003 primary care records by Dr. Dawn Alexander (Augusta Family Practice) document the plaintiff's treatment for a number of problems including: chronic bronchitis, stress incontinence, irritable bowel syndrome, abdominal pain, excessive fatigue and gastrointestinal reflux disease. (R.167-170,174-178). They record the plaintiff's on going care by Dr. Wynne for her various mental health issues. (R.167,172,176). They document the plaintiff's chronic difficulties with low back pain related to a right posteolateral disc herniation at L4/L5 with attendant nerve root impingement (R.167,176,186-188), and they note Dr. Alexander's referral of the plaintiff to the AMC pain clinic for treatment of this chronic back condition. (R.174).

When initially seen by Dr. Preston Grice (Augusta Pain Management) in the fall of 2003 (R.196-199), he noted the plaintiff's multiple low back problems, including the broad right posteolateral and foraminal disc hereniation at L4/L5 with "mass effect" on the nerve root, a small left posterior paracentral disc herniation at T11/T12, a broad based left posteolateral disc herniation at T12/L1, and a bulge and small central disc herniation at L5/S1 (R.196). *Inter alia*, Dr. Grice also noted the plaintiff's complaints of chronic low back pain and attendant lower limb radicular pain. (R.196-199). Over the subsequent two years, Dr. Grice's office notes show that the plaintiff was seen in his office about every six weeks and was treated with a significant pain medication [9] regime. (R.190-200,343-357).

---

[9] Principally Percocet, an oxycodone and acetaminophen combination.

Case 5:06-cv-00047-SGW-JGW   Document 21   Filed 04/05/07   Page 10 of 21   Pageid#: 71

Pertinent to her appeal, the plaintiff's 2003-2005 UVa Clinic records similarly document her chronic pain related to degenerative disc disease and an attendant lower extremity radiculopathy and continued treatment with a strong medication regime, her "severe depression and its continued pharmacological management, her continuing complaints of chronic fatigue and malaise, and the March 2005 diagnosis by ultrasound of hepatitis-C. (R.203-217,223,255-299,322-332).

After having seen the plaintiff "every 3-4 month since [January] 2004," Dr Druff completed a medical questionnaire in October 2005. (R.333-337). Therein, Dr. Druff outlined the plaintiff's numerous symptoms and diagnoses, her chronic daily low back pain, her "severe[ly]" flat and tearful affect, the failure of pain medications to control her pain adequately, her "very severe" depression "with suicidal ideations," her severe tachycardia, her concentration difficulties, and a detailed outline of her disabling functional limitations. (R.333-337).

As part of the state agency's processing of the plaintiff's applications, her then available medical records were reviewed both by state agency psychologists (R.224-241) and state agency physicians (R.242-249). On psychological review in March 2004, and by reaffirmation in August, 2004, it was concluded that the plaintiff's records failed to demonstrate a Listing 12.04 level mood disorder, showed only "moderate" functional limitations, and indicated a capability, between June 14, 1996 and December 31, 2003, to do simple, repetitive, routine work in an unstressed environment. (R.224-241). Similarly, the medical reviewers reached the same conclusion regarding the plaintiff's residual functional capacity. (R.242-249).

Additional vocational evidence in the record came from Barry Hensley, a vocational witness present at the administrative hearing. (R.382-287). Asked by the ALJ to assume an individual with the plaintiff's vocational profile and with a lengthy list of functional limitations,[10] Dr. Hensley opined that such a hypothetical individual would not be able to do any of her past work. (R.384). In his opinion, however, she would be able to do some types of basic unskilled work as a truck driver, as an "aide [INAUDIBLE]," as a maid or as an assembler. (R.385). In response to a follow-up question by plaintiff's counsel, Dr. Hensley further opined that work of the types he identified in response to the hypothetical could not be performed by an individual exhibiting the significant absenteeism described by the plaintiff in her testimony. (R.387).

## IV.    Analysis

### A.    Claim Consideration Based on Wrong Onset Date

As her first assignment of administrative error, the plaintiff notes that the ALJ's consideration of her claim was predicated on his belief that the plaintiff was seeking to establish a June 15, 1996 disability onset, when in fact she was seeking to establish her disability only as of the date she was terminated from her last substantial gainful work on April 9, 2002. [11] Admitting the

---

[10] Nine (9) places in the transcript of the ALJ's hypothetical question were noted by the transcribing reporter to be "[INAUDIBLE]."

[11] At the hearing, the plaintiff's contention was, and remains, that her subsequent short term work effort at a small loan company, which also ended in her termination for excessive absenteeism, qualified as an unsuccessful work attempt pursuant to 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1) and SSR05-2.

12

error, the Commissioner contends that it was nevertheless "irrelevant," because the ALJ's decision relied on the medical record and not the plaintiff's work record.

At its most fundamental level, the Commissioner's argument ignores the ALJ's obligation under SSR 83-20 to make an onset date determination on the basis of a multi-factor analysis. In rank order, it directs the decisionmaker to consider (1) the applicant's allegations, (2) the applicant's work history, if any, and (3) the applicants medical and other evidence concerning impairment severity. In the words of the regulation,

> The starting point in determining the date of onset of disability is the individual's statement as to when disability began. This is found on the disability application and on the Form SSA-3368-F8/3820-F6 (Disability Report). A change in the alleged onset date may be provided in a Form SSA-5002 (Report of Contact), a letter, another document, or the claimant's testimony at a hearing.

The ALJ's decision also contradicts the Commissioner's contention of irrelevancy. The record shows that the ALJ considered in some detail the plaintiff's work and educational undertakings over the entire span of years from 1996 forward, that he considered these activities in connection with his determination that the plaintiff's last work effort at the small loan company job constituted substantial gainful activity, that he considered these activities as part of his assessment the plaintiff's testimonial credibility, and that he considered these activities in weighing the medical evidence. (R.17-21).

Additionally, the Commissioner's contention fails to acknowledge the fact that an ALJ's determination of an individual's functional capacity is, by its very nature, multi-dimensional. *Smith*

13

*v. Barnhart*, 2006 U.S. Dist. LEXIS 49126, *26 (WDVa). As the agency's regulations note, a full and fair consideration of functionality requires a look longitudinally at multiple factors, including duration, intensity, frequency and type of physical activity. *See generally* SSR 96-8p.

It is axiomatic that the Commissioner has the duty to give a fair and careful consideration to every claim. *See e.g. Bowen v. New York*, 476 U.S. 467, 480 (1986); *Kasey v. Sullivan*, 3 F.3[d] 75, 79 (4th Cir. 1993). By his utilization of a grossly incorrect onset date throughout the decisional analysis, the ALJ in this case simply failed fully and fairly to consider the plaintiff's claim. This error tainted his consideration of her claim at its most fundamental level, and requires that the final decision of the Commissioner be vacated and remanded for administrative reconsideration.

## B. Absence of Substantial Evidence to Support ALJ Decision

As noted herein above, in reviewing a decision to deny a period of disability benefits, the court is limited to determining whether the administrative decision was supported by substantial evidence in the record and whether the proper legal standard was applied in evaluating the evidence. *Coffman v. Bowen*, 829 F.2[d] 514, 517 (4th Cir. 1987). After examining the record as a whole, it is the opinion of the undersigned magistrate judge that substantial evidence does not support the Commissioner's decision to deny both the plaintiff's Title II and Title XVI claims.

14

This determination rests largely on two fundamental deficiencies in the record as submitted by the agency. First, the multiple "[INAUDIBLE]" [12] references in the transcription of ALJ's hypothetical question do not permit either a considered review of the record in its entirety or a meaningful determination that the ALJ's step-five conclusion is or is not supported by substantial evidence.

Second, the administrative record presents the court multiple decisional inconsistencies. There is a manifest inconsistency between the formal step-one finding that the plaintiff had not engaged in substantial gainful work activity since June 15, 1996 and the decisional discussion and conclusion that the plaintiff was still performing substantial gainful work activity in 2002. (*Compare* R.24 *with* R.17-18). Similarly, the ALJ's decision presents an apparently inconsistent consideration of the plaintiff's mental health condition. At step-two, the ALJ found that this condition never satisfied the 12-month durational requirement necessary for it to be "severe, and at step-three her mental health problems are deemed it to be "severe" for Listing-level consideration. (*Compare* R.19 *with* R.20).

"Judicial review of an administrative decision is impossible without an adequate explanation of that decision." *DeLoatche v. Heckler*, 715 F.2$^d$ 158,150 4th Cir. 1983). As currently written, the decision in the case now before the court simply does not permit such a meaningful review and it should be vacated and remanded for further proceedings.

---

[12] See footnote 9.

**C.     Failure to Consider Material "Interim" Evidence**

Pursuant to settled authority, the Appeals Council is obligated to consider evidence submitted in connection with a timely request for administrative review and to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Secretary, Dep't of Health & Human Servs.*, 953 F.2$^d$ 93, 95-96 (4th Cir. 1991) (*en banc*) (quoting *Williams v. Sullivan*, 905 F.2$^d$ 214, 216 (8th Cir. 1990)); *Casey v. Secretary, Dep't of Health & Human Servs.*, 987 F.2$^d$ 1230, 1233 (6th Cir. 1993); *Russell v. Bowen*, 856 F.2$^d$ 81, 83-84 (9th Cir. 1988); *O'Dell v. Shalala*, 44 F.3$^d$ 855, 858 (10th Cir. 1994). *See also* 52 U.S.C. § 45(g); 20 C.F.R. §§ 404.955(c), 404.970(b), 404.987, 416.1470(b), 416.1487, 416.1455(c).

In the case now before the court, the plaintiff, by her counsel, submitted additional evidence, including a multi-page functional assessment made by Dr. Kimberley Druff, the plaintiff's treating primary care physician. (R.333-338). By cover of a letter brief (R.339-342) submitted therewith, plaintiff's counsel argued *inter alia* that this additional evidence concerning the plaintiff's functional limitations demonstrated her disability and dovetailed with certain hearing testimony of the vocational witness (R.340). The Appeals Council, however, found no basis either in the record or in the new evidence to review the ALJ's decision. (R.6-9). Thus, the ALJ's decision stands as the final decision of the Commissioner. *Wilkins*, 953 F.2$^d$ at 96.

Although Dr. Druff's functional assessment of the plaintiff's condition is dated after the date of the ALJ's decision, it is, as she notes, based on her regular contact with the plaintiff since January

16

2004. (R.333). In addition, Dr. Druff predicates her detailed assessment of the plaintiff's residual functional capacity on the longitudinal nature of her multiple medical problems. For example, she describes the plaintiff's difficulty with concentration as "often severely limited." (R.337). Similarly, she describes the plaintiffs tachycardia as "chronic," her low back pain as "fluctuating severely," and her depression as "severe with suicidal ideation" and "severe flattened affect." (R.333,337).

As previously noted, the ALJ rendered his decision on September 1, 2005. Consequently, he did not have the benefit of Dr. Druff's detailed functional assessment. It was, however, submitted to the Appeals Counsel in a timely manner and available for administrative review, and in its Notice the Appeals Council acknowledged both its receipt and its purported [13] consideration.

As the Commissioner concedes in her brief, the court in this district has consistently held that it is incumbent on the Appeals Council, when it ostensibly considers the new ("interim") evidence in connection with the denial of administrative review, to give some reasons for finding that the "interim" evidence does not justify further administrative action. *See e.g. Cagle v. Barnhart*, 2006 WL 544005 (WDVa) (*citing Alexander v. Apfel,* 14 F.Supp. $2^d$ 839, 843 (WDVa, 1998) and *Stawls v. Califano,* 596 F.2$^d$ 1209, 1213 (4th Cir. 1979) ("As we have stated on more than one occasion, *the [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight.* (Emphasis added). (Citations omitted)).

---

[13] "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the administrative Law Judge's decision." (R.6-7).

17

Remand, the Commissioner nevertheless argues, is not necessary in this case because it "is clear on consideration" that the plaintiff is not entitled to benefits. Implicitly, this is the Commissioner's generally advanced argument that an explanation is required by the Appeals Council only when the "interim" evidence patently both new and material. By this argument, evidence is "new" only if it "is shown to be neither duplicative nor cumulative" and to be "material" only if there is a demonstrated possibility that it will change the outcome. *See generally Wilkins*, 953 F.2$^d$ at 96.

*Inter alia* for the reasons outlined by the court in *Cagle v. Barnhart, supra*, this seems to be an inappropriately cramped reading of *Wilkins*.[14] Without the Commissioner setting forth the basis upon which she resolved all factual conflicts, a meaningful substantial evidence review is simply not possible.

Even if the Commissioner's position is assumed *arguendo*, the assessment of Dr. Druff, meets both prongs of the "new" and "material" test. She is the treating primary care physician, and generally more decisional weight is given to a treating source. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Since her assessment is based on her treatment during a time period later than the state agency assessments, it is particularly relevant to the plaintiff's SSI claim. It is, therefore, neither duplicative nor cumulative. Likewise, it is particularly relevant to the ALJ's required "residual functional capacity" consideration. See SSR 85-16. Moreover, it provides a detailed assessment of the plaintiff's functional abilities which is significantly different from the one

---

[14] "The practical effect of the *Wilkins* decision is that 'interim' evidence is to be considered as part of the record for review and not as extraneous, 'new' evidence." *Cagle v. Barnhart*, 2006 WL 54405 (WDVa).

apparently set-out in the ALJ's hypothetical. In addition, it makes significant reference to the plaintiff's ongoing tachycardia and indicates it to be significantly worse than any earlier medical evidence suggested.

In passing, it is also noteworthy that the information and detail provided by Dr. Druff represents the type of medical information and functional assessment needed to document disability within the meaning of the Social Security Act. Based on the undersigned's long experience as a practitioner with the UVa Clinic, it is important also to note that it is routinely difficult to obtain such detail from Clinic doctors. They face heavy professional demands on a daily basis. The number of medically under-served patients is daunting, and the bureaucratic difficulties that attend any effort to obtain medical assessments and reports is a systemic problem. Consequently, it is not at all surprising that counsel for the plaintiff found it necessary to supplement the record after issuance of the ALJ's decision.

In the instant case, it is believed that the "interim" evidence, particularly the assessment of Dr. Druff, is highly significant and merits vacating the Commissioner's decision and remanding the case for further consideration.

## V.     Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings,

conclusions and recommendations:

1.  The ALJ failed to consider adequately all of the evidence in this case;

2.  The final decision of the Commissioner is not supported by substantial evidence;

3.  It is proper to reverse the Commissioner's decision and to remand the case to the Commissioner, pursuant to "sentence four" of 42 U.S.C. § 405(g), for reconsideration in a manner not inconsistent with this report and recommendation; and

4.  On remand, the parties should have the opportunity to introduce such additional evidence as they may be advised is appropriate.

## VI.    Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order enter DENYING the defendant's motion to dismiss, VACATING the Commissioner's final decision, REMANDING the case to the Commissioner for further proceedings and reconsideration in a manner not inconsistent with this Report and Recommendation and with the parties to have the opportunity to introduce such additional evidence as they may desire, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States District Judge.

20

## VII.    Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

The clerk is directed to transmit copy of this Report and Recommendation to all counsel of record.

DATED: 4th day of April 2007.

_____
United States Magistrate Judge